UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**LoadMatch, Inc.,**

              **Plaintiff,**

    **v.**

**LoadMatch Logistics, Inc.,**

              **Defendant.**

**Case No.**

**Jury Trial Demanded**

**COMPLAINT FOR TRADEMARK INFRINGEMENT**

Plaintiff, LoadMatch, Inc. (hereinafter "LoadMatch"), through its counsel, alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for trademark infringement, unfair competition and related claims, all related to LoadMatch's rights in the mark LoadMatch and in its U.S. Trademark Reg. No. 4,720,199 ("the '199 Registration"). Defendant intentionally copied Plaintiff's mark and is using it in commerce. Defendant also intentionally registered, trafficked in and used a domain name that is confusingly similar to Plaintiff's LoadMatch mark. By this action, LoadMatch seeks to stop defendant's ongoing acts, prevent defendant's future acts, and/or receive just compensation for defendant's past acts, all relating to defendant's offer of services using the trademark LoadMatch and the domain name www.loadmatch123.com.

**THE PARTIES**

2. Plaintiff, LoadMatch, Inc. (hereinafter "LoadMatch"), is an Illinois corporation having its principal place of business at 1108 N. Wright St., Naperville, Illinois 60563.

3. Upon information and belief, Defendant, LoadMatch Logistics, Inc. (hereinafter "LoadMatch Logistics"), is a North Carolina corporation having its principal place of business at 1013 Ashes Drive, Suite 200, Wilmington, North Carolina 28405.

## JURISDICTION AND VENUE

4. This is a Complaint for trademark infringement arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*; 15 U.S.C. § 1114(1)(a); unfair competition, passing off, false advertising and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); and for unfair competition and deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. Ann. § 510, *et seq.*

5. The Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b). The Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

6. The Court has personal jurisdiction over the defendant because the defendant (a) maintains continuous and systematic commercial contacts with the State of Illinois, (b) does business or has done business in this District, and/or (c) the defendant has committed acts of infringement in this District.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), because the defendant resides in the Northern District of Illinois, *see* 28 U.S.C. § 1391(c)(2), and pursuant to 28 U.S.C. § 1391(b)(2), because events giving rise to the claim occurred, and continue to occur, in the Northern District of Illinois. The damage to LoadMatch described herein takes place in the Northern District of Illinois.

## BACKGROUND

8. Plaintiff, LoadMatch, was incorporated in Illinois in 1999.

9. Continuously since 1999, using in interstate commerce the mark LoadMatch, LoadMatch offers freight management services, namely a web-based service for matching loads, trucks, and equipment for intermodal and import/export transportation such that freight and

2

equipment needing transport are matched with transporters over a computer network and/or the internet ("the LoadMatch services").

10. Continuously since 1999, using in interstate commerce the mark LoadMatch, LoadMatch uses the mark, LoadMatch with a capital M in the middle of the word and with no space between the words.

11. Since 1999, LoadMatch has sold millions of dollars' worth of the LoadMatch services throughout the United States.

12. On September 5, 2014, LoadMatch filed U.S. Trademark Application No. 86/386,257 for the mark, "LOADMATCH," before the U.S. Patent and Trademark Office.

13. On April 14, 2015, the U.S. Patent and Trademark Office granted Application No. 86/386,257 and issued U.S. Trademark Reg. No. 4,720,199 ("the '199 Registration").

14. A copy of the '199 Registration is attached to this Complaint as Exhibit A.

15. The '199 Registration is valid and in full force and effect.

16. The '199 Registration serves as prima facie evidence of the validity of the Mark.

17. The '199 Registration serves as prima facie evidence of Plaintiff's exclusive right to use the Mark in connection with the services identified therein.

18. LoadMatch owns and has been using the domain name www.LoadMatch.com continuously since 1999.

19. At all times pertinent hereto, LoadMatch has used the domain name www.LoadMatch.com to promote at least the following services: "Freight management services, namely a web-based service for matching loads, trucks, and equipment for intermodal and import/export transportation such that freight and equipment needing transport are matched with transporters over a computer network and/or the internet."

20. Since 1999, LoadMatch has spent substantial resources promoting the mark LoadMatch.

21. For each of the years 1999 to 2005, LoadMatch enjoyed successively higher gross revenues using the LoadMatch mark and using the www.LoadMatch.com domain.

22. However, beginning in 2006, LoadMatch has suffered significantly lower gross revenues.

23. Since 2006 through 2014, LoadMatch has realized a total of negative (i.e. less than zero) net revenue.

24. Defendant, LoadMatch Logistics, offers services similar to LoadMatch's services.

25. Defendant, LoadMatch Logistics, offers the following services: freight management services, namely matching loads, trucks, and equipment for intermodal and import/export transportation such that freight and equipment needing transport are matched with transporters over a computer network and/or the internet.

26. Defendant, LoadMatch Logistics, has promoted and offered, and continues to promote and offer, the above-described services using the mark, LoadMatch.

27. Defendant, LoadMatch Logistics, has promoted and offered, and continues to promote and offer, the above-described services using the mark, LoadMatch with a capital M in the middle of the word and with no space between the words.

28. Upon information and belief, Defendant, LoadMatch Logistics, promoted and offered the above-described services using the mark, LoadMatch with a capital M in the middle of the word and with no space between the words, within the state of Illinois.

29. Upon information and belief, Defendant, LoadMatch Logistics, promoted and offered the above-described services using the mark, LoadMatch with a capital M in the middle of the word and with no space between the words, within the Northern District of Illinois.

30. Defendant, LoadMatch Logistics, promoted and offered the above-described services using the mark, LoadMatch with a capital M in the middle of the word and with no space between the words, in a transaction with an Illinois corporation.

31. Upon information and belief, Defendant, LoadMatch Logistics, selected the mark "LoadMatch" with knowledge of LoadMatch's trademark, LoadMatch.

32. Upon information and belief, Defendant, LoadMatch Logistics, selected the mark "LoadMatch" with knowledge of LoadMatch's trademark, LoadMatch, specifically using a capital M in the middle of the LoadMatch word and with no space between the words.

33. Employees of Defendant, LoadMatch Logistics, have answered LoadMatch Logistics' telephone, and continue to answer LoadMatch Logistics' telephone, referring to the company as "LoadMatch."

34. Defendant, LoadMatch Logistics, operates a website at www.LoadMatch123.com.

35. Defendant, LoadMatch Logistics, operates the website at www.LoadMatch123.com to offer services similar to LoadMatch's services.

36. Defendant, LoadMatch Logistics, operates the website at www.LoadMatch123.com to offer the following services: freight management services, namely matching loads, trucks, and equipment for intermodal and import/export transportation such that freight and equipment needing transport are matched with transporters over a computer network and/or the internet.

37. Upon information and belief, Defendant, LoadMatch Logistics, selected and registered the domain name "LoadMatch123.com" with knowledge of LoadMatch's trademark, LoadMatch.

38. Upon information and belief, Defendant, LoadMatch Logistics, selected and registered the domain name "www.LoadMatch123.com" with knowledge of LoadMatch's domain, www.LoadMatch.com.

39. Beginning in 2013, plaintiff LoadMatch noticed a relatively large number of events evidencing actual instances of consumer confusion as between LoadMatch and LoadMatch Logistics.

5

40. Upon information and belief, beginning in 2013, LoadMatch Logistics began an expanded use of the LoadMatch mark or otherwise directed its marketing or and services to place itself and its use of the LoadMatch mark more squarely in competition with LoadMatch.

41. LoadMatch Logistics' use of the mark LoadMatch since 2013 constitutes a material alteration of its infringing activities with respect to the mark, LoadMatch.

42. LoadMatch's President, Jason Hilsenbeck, has been in contact with Defendant's President, Gary L. Winstead, in an attempt to resolve this dispute amicably.

43. When confronted with actual instances of consumer confusion, Defendant's President has at least twice referred to Mr. Hilsenbeck, in correspondence to others, as "Mr. Whistledick."

44. One of these instances occurred on July 25, 2013.

45. Attached as Exhibit B hereto is a true and accurate copy of an email Mr. Winstead sent stating "Mr. Whistledick is correct. LoadMatch Logistics and LoadMatch.com are unaffiliated."

46. Mr. Winstead knew at the time he sent the email shown in Exhibit B that Mr. Hilsenbeck's name was not "Mr. Whistledick."

47. It was Mr. Winstead's intent to denigrate Mr. Hilsenbeck and his concern over the consumer confusion evident at that time.

48. Additionally, Exhibit B confirms an instance of actual consumer confusion between LoadMatch and LoadMatch Logistics as a source of origin.

49. Another of these instances occurred on July 23, 2014.

50. Attached as Exhibit C hereto is a true and accurate copy of an email Mr. Winstead sent stating "Mr. Whistledick is correct. LoadMatch Logistics and LoadMatch.com are unaffiliated."

51. In the email shown in Exhibit C, Mr. Winstead acknowledged actual consumer

confusion.

52. Mr. Winstead knew at the time he sent the email shown in Exhibit C that Mr. Hilsenbeck's name was not "Mr. Whistledick."

53. It was Mr. Winstead's intent to denigrate Mr. Hilsenbeck and his concern over the consumer confusion evident at that time.

54. Additionally, Exhibit C confirms an instance of actual consumer confusion between LoadMatch and LoadMatch Logistics as a source of origin.

55. Since 2013, many instances of actual consumer confusion between LoadMatch and LoadMatch Logistics as a source of origin have occurred. The following lists but a few of them.

56. On April 5, 2013, Greer Cypress of Cypress Logistics indicated actual confusion between LoadMatch and LoadMatch Logistics as a source of origin, stating "I assumed it was in connection with Load Match in Wilmingon, NC … ." Exh. D.

57. On April 30, 2013, LoadMatch Logistics' President, Gary Winstead, forwarded correspondence to LoadMatch threatening legal action because LoadMatch had explained that LoadMatch Logistics was illegally using the LoadMatch name. Exh E.

58. On April 30, 2013, Preston Reeves, of PB Express, indicated actual confusion between LoadMatch and LoadMatch Logistics as a source of origin, stating "My apologies, I have no idea these were 2 different companies." Exh F.

59. On August 19, 2013, Vickie Brown, of Falcon Transport, inquired whether LeadMatch's President, Mr. Hilsenbeck, was a partner in LoadMatch Logistics. On August 19, 2013, Ms. Brown followed up, indicating that LoadMatch Logistics had "trucks running around Savannah [GA] with Load Match on the side." Exh. G.

60. On July 25, 2014, LoadMatch received a call from 804-525-0853 from a person "asking for Gary at LoadMatch123." Exh. H.

61. On August 22, 2014, LoadMatch received a Detention Notice from Jacksonville Dispatch pertaining to monies ostensibly owed to Jacksonville Dispatch by LoadMatch Logistics. Exh. I.

62. On September 16, 2014, LoadMatch received a telephone call from DHL inquiring whether LoadMatch123 received DHL's delivery order. Exh. J.

63. On January 6, 2015, Hank Readdy of US Services, LLC inquired whether LoadMatch's President, Mr. Hilsenbeck, was "affiliated with the LOADMATCH123 people … ." Exh. K.

64. On August 19, 2015, Jeff Hershey of Roadrunner Intermodal Services inquired of LoadMatch's President, Mr. Hilsenbeck, whether LoadMatch Logistics was his company. Exh. L.

65. Upon information and belief, Roadrunner Intermodal Services did business with Loadmatch Logistics in 2015.

66. As shown in Exhibit M hereto, as of August 2015, Roadrunner Intermodal Services had a Chicago, Illinois, address.

67. As of August, 2015, Roadrunner Intermodal Services was an Illinois limited liability company.

**COUNT I - TRADEMARK INFRINGEMENT UNDER 15 §§ U.S.C. 1114 ET SEQ.**

68. LoadMatch hereby realleges and incorporates by reference the allegations of paragraphs 1 to 67 of its Complaint as if fully set forth herein.

69. Plaintiff LoadMatch is the rightful owner of the Mark LoadMatch.

70. In addition to its rights in LoadMatch at common law, Plaintiff LoadMatch is the owner of U.S. Trademark Reg. No. 4,720,199.

71. Without authorization from Plaintiff LoadMatch, Defendant has used and continues to use the Mark LoadMatch by using a mark that is likely to cause confusion, mistake and/or deception as to source, sponsorship, or affiliation, subjecting Defendant to liability under 15 U.S.C. § 1114, *et seq*.

72. Defendant's infringement is and has been willful.

73. Defendant's infringing actions have damaged Plaintiff LoadMatch in an amount to be determined at trial.

74. Defendant's infringing actions will continue unless enjoined by this Court.

75. Plaintiff LoadMatch has no adequate remedy at law and will suffer irreparable harm to its business, reputation, and goodwill unless Defendant's unlawful conduct is enjoined by this Court.

### COUNT II - FALSE DESIGNATION OF ORIGIN UNDER 15 § U.S.C. 1125(a)

76. LoadMatch hereby realleges and incorporates by reference the allegations of paragraphs 1 to 75 of its Complaint as if fully set forth herein.

77. The Defendant's use of LoadMatch to sell services constitutes a false designation of origin pursuant to 15 U.S.C. § 1125(a), suggesting to consumers that Defendant is associated with or sponsored by Plaintiff LoadMatch.

78. Defendant's unauthorized use of this term has a substantial effect on interstate commerce.

79. Defendant's false designation of origin has been made in connection with goods and services from which it makes a profit.

80. Defendant's false designation of origin is likely to cause confusion, mistake, or deception as to the origin, sponsorship or approval by the Plaintiff of the goods and services provided by Defendant, subjecting Defendant to liability under 15 U.S.C. § 1125(a).

81. Defendant's false designation of origin is willful, and has damaged LoadMatch in an amount to be determined at trial.

82. Defendant's false designation of origin will continue unless enjoined by this Court.

83. Plaintiff LoadMatch has no adequate remedy at law and will suffer irreparable harm to its business, reputation, and goodwill unless Defendant's unlawful conduct is enjoined by this Court.

### COUNT III - USE OF DOMAIN NAME IN VIOLATION OF 15 § U.S.C. 1125(d)

84. LoadMatch hereby realleges and incorporates by reference the allegations of paragraphs 1 to 83 of its Complaint as if fully set forth herein.

85. The Defendant's registration, trafficking and use of the domain name www.loadmatch123.com was made with the bad faith intent to profit from LoadMatch's LoadMatch mark.

86. The domain name www.loadmatch123.com is confusingly similar to the mark, LoadMatch.

87. Defendant's use of this domain has a substantial effect on interstate commerce.

88. Defendant's use of this domain has been made in connection with services from which it makes a profit.

89. Defendant's use of this domain is likely to cause confusion, mistake, or deception as to the origin, sponsorship or approval by the Plaintiff of the services provided by Defendant, subjecting Defendant to liability under 15 U.S.C. § 1125(a).

90. Defendant's use of this domain has damaged LoadMatch in an amount to be determined at trial.

91. Defendant's use of this domain will continue unless enjoined by this Court.

92. Plaintiff LoadMatch has no adequate remedy at law and will suffer irreparable harm to its business, reputation, and goodwill unless Defendant's use of this domain is enjoined by this Court.

## COUNT IV - UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES

93. LoadMatch hereby realleges and incorporates by reference the allegations of paragraphs 1 to 92 of its Complaint as if fully set forth herein.

94. Defendant is, and at all times relevant was, engaged in commerce.

95. By its above-described conduct, Defendant has engaged in unfair competition and deceptive trade practices in violation of 815 Ill. Comp. Stat. Ann. § 510, *et seq*.

96. Defendant's unfair competition and deceptive trade practices impact the public interest by causing consumer confusion.

97. Defendant's unfair competition and deceptive trade practices have been willful.

98. Defendant's unfair competition and deceptive trade practices have damaged LoadMatch in an amount to be determined at trial.

99. Defendant's unfair competition and deceptive trade practices will continue unless enjoined by this Court.

100. Plaintiff LoadMatch has no adequate remedy at law and will suffer irreparable harm to its business, reputation, and goodwill unless Defendant's unlawful conduct is enjoined by this Court.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, LoadMatch, asks this Court to enter judgment against Defendant LoadMatch Logistics, granting the following relief:

a. Judgment for Plaintiff and against Defendant in an amount to be determined at trial;

b. An award of damages adequate to compensate LoadMatch for the infringement that has occurred, together with prejudgment interest from the date of infringement;

c. An award of Defendant's profits realized from the infringement;

d. A declaration that Defendant's conduct was willful;

e. Trebling of the damages award;

f. A permanent injunction prohibiting further infringement;

g. An Order directing Defendant to transfer all rights and interest in the domain name www.loadmatch123.com to Plaintiff;

h. An Order requiring Defendant to deliver up for destruction all signs, displays, advertisements and any other materials in its possession or control, or in the possession and control of its agents, which bear the mark or name LoadMatch, or any mark or term confusingly similar to Plaintiff's LoadMatch mark;

i. An award compensating Plaintiff for the advertising or other expense necessary to dispel any confusion caused by Defendant's infringement, unfair competition or other unlawful acts;

j. Costs of this action, together with LoadMatch's reasonable attorneys' fees and disbursements incurred herein; and

k. Such other relief as this Court or a jury may deem proper and just.

**JURY DEMAND**

Pursuant to Rule 38, FED. R. CIV. P., LoadMatch demands a trial by jury on all issues presented in this Complaint.

Dated: December 18, 2015            Respectfully submitted,

/Charles C. Kinne/
Charles C. Kinne
**KINNE IP GROUP**
1240 Iroquois Avenue, Suite 204
Naperville, Illinois 60563
Ph.: (630) 904-0940
Fax: (888) 887-7158
ckinne@kinnelaw.com

Counsel for Plaintiff,
**LoadMatch, Inc.**